DERRICK HARRISON (B-74877),

        Plaintiff,

        v.

WEXFORD HEALTH SEVICES, INC.; SALEH
OBAISI; JENNIFER ENCARNACION; SGT.
TROY MAYS,

        Defendants.

No. 13 C 3256

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Derrick Harrison, an Illinois prisoner confined at Stateville Correctional Center, alleges that Stateville staff and medical service providers were deliberately indifferent to his medical needs in violation of the Eighth Amendment and retaliated against him for filing a grievance about this conduct. *See* R. 8. Specifically, Harrison alleges that after he fell while trying to close a high window, Sergeant Troy Mays and Nurse Jennifer Encarnacion refused to provide him treatment, and that Sergeant Mays retaliated against him for filing a grievance about the incident. *Id.* Harrison also alleges that Dr. Saleh Obaisi, the medical director at Stateville, and Stateville's medical services provider, Wexford Health Services, Inc., failed to provide him with appropriate care for his injured back. *Id.* Dr. Obaisi and Wexford (collectively, "the Medical Defendants") have moved for summary judgment, R. 103, as have Sergeant Mays and Nurse Encarnacion (collectively, the "Stateville Defendants"). R. 108. For the following reasons, both motions are granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

**I.      Northern District of Illinois Local Rules**

Because Harrison is a pro se litigant, the Medical Defendants and the Stateville Defendants served him with notices pursuant to Local Rule 56.2, explaining the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1. R. 104; R. 111. Local Rule 56.1 "is designed, in part, to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the

relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Local Rule 56.1 requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue," and the opposing party to submit "a response to each numbered paragraph in the moving party's statement . . . [and] a statement . . . of any additional facts that required the denial of summary judgment." "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *see also Frey Corp. v. City of Peoria*, 735 F.3d 505, 513 (7th Cir. 2013) ("A failure to respond to any numbered fact in the opposing party's motion for summary judgment will be deemed an admission of the fact.").

Both the Medical Defendants and the Stateville Defendants filed statements pursuant to Local Rule 56.1. R. 106; R. 112. Harrison responded to both motions for summary judgment with memorandums in opposition to the motions, *see* R. 113; R. 114, but he failed to file statements pursuant to Local Rule 56.1. For this reason, the Court accepts all assertions in Defendants' statements of facts as true to the extent that the facts are supported in the record. *See* L.R. 56.1(b)(3)(C); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). In this regard, the Court "is not required to scour the record looking for factual disputes" nor is the Court required "to piece together" Harrison's arguments for him. *See Diadenko v. Folino*,

741 F.3d 751, 757 (7th Cir. 2013); *see also Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."). Harrison's failure to comply with Local Rule 56.1, however, does not result in an automatic grant of summary judgment in favor of Defendants. Instead, the Court still must evaluate all facts in the light most favorable to Harrison, the non-moving party. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

## II. Facts

At the time of Harrison's fall on November 12, 2012, he was a gallery worker/cell house helper at Stateville, which meant that he picked up garbage, passed out trays, swept the floor, and cleaned the showers. R. 112 ¶ 28. As part of his duties as a gallery worker, Harrison climbed a "bullpen cage" in order to close the windows, allegedly at the direction of an unnamed officer who is not a defendant in this case. R. 106 ¶ 14; R. 112 ¶ 15; R. 106-2 at 14:23–15:9. Harrison slipped and fell off the cage and onto a plastic food cart. R. 106 ¶ 14; R. 112 ¶ 15; R. 106-2 at 14:23–15:9.

When Harrison fell, Sergeant Mayes and Nurse Encarnacion were about four cells away from Harrison, as Sergeant Mayes was escorting Nurse Encarnacion while she distributed medication to inmates in their cells. R. 112 ¶¶ 14-15. After the fall, Harrison told Sergeant Mayes that he had pain shooting from his neck down his leg. *Id.* ¶ 16. Nurse Encarnacion directed Sergeant Mayes to call the Health Care Unit,

which advised Sergeant Mayes that Harrison would be brought to the unit for evaluation the following day. *Id.* ¶ 17.

The next day, Harrison was examined in the Health Care Unit by physician's assistant La Tanya Williams. *Id.* ¶ 18; R. 106 ¶ 15. Upon examination, Harrison exhibited tenderness in his neck, and an x-ray of his cervical spine was ordered. *Id.* Williams prescribed Motrin, an anti-inflammatory medication; Robaxin, a muscle relaxer; and an analgesic balm for Harrison. *Id.* Williams also provided Harrison with permits for ice, a low-bunk/no activity permit, and a 3-day lay-in to allow Harrison to receive meals in his cell. *Id.*

Two days later, on November 15, Harrison underwent x-rays of his cervical and lumbar spines, which were negative. R. 106 ¶ 16; R. 112 ¶ 19. On November 20, Harrison was referred to Dr. Obaisi for a further examination in response to his complaints of back pain. R. 106 ¶ 17; R. 112 ¶ 20. Dr. Obaisi had not been aware of Harrison's back injury prior to this examination. R. 106 ¶ 17. Dr. Obaisi told Harrison that the x-rays of his cervical and lumbar spine were negative, and administered an injection of Depo Medrol, an anti-flammatory medication and pain reliever, into Harrison's sacroiliac joint. *Id.* Dr. Obaisi also injected Lidocaine, a pain reliever, into Harrison's trapezoid. *Id.* Dr. Obaisi gave Harrison a two-week lay-in permit. *Id.*

Harrison saw Dr. Obaisi several more times over the following two months, including on November 28 and December 12, 2012, and January 8, 26, and 31, 2013.

*Id.* ¶¶ 18-22. Dr. Obaisi prescribed various pain relievers as a result of these examinations. *Id.* During January 2013, Harrison reported that his back pain was slowly improving, *id.* ¶ 20, and that he was not experiencing any pain, tingling, or numbness of his extremities during. *Id.* ¶ 21. On January 31, Dr. Obaisi discontinued Harrison's prescription for Motrin and prescribed only Tylenol 3. *Id.* ¶ 22.

Despite these apparent improvements in Harrison's condition, on February 5, 2013, Dr. Obaisi sought approval to schedule an MRI of Harrison's lumbar spine. R. 106 ¶ 23. As a result, Wexford referred Harrison to have an MRI done at the University of Illinois Medical Center ("UIC"). *Id.* The MRI was taken on April 5, and showed degenerative changes of the lumbar spine at the L4-L5 and L5-S1 levels. *Id.* ¶ 24.

Harrison then saw Dr. Obaisi or other doctors on May 2, 16, and 29, July 13, August 15, and September 9 and 20. *Id.* ¶¶ 25-31. At these appointments Harrison complained of back pain and was prescribed a variety of medication to manage his pain. *Id.*[1] On September 26, Harrison was examined by Dr. Obaisi, who discussed with him the results of the MRI and directed Harrison to continue his current treatment protocol. *Id.* ¶ 32.

On October 23, Harrison was examined by a nurse at Stateville, and he reported that he was still in pain, but felt well enough to engage in "slight exercise." *Id.* ¶ 33. On November 8, Harrison was brought to the Health Care Unit after

---

[1] Dr. Obaisi states that Harrison did not complain of pain on September 20, 2013, R. 106-3 ¶ 25, but this statement is contrary to the medical records the Medical Defendants attached to their motion. *See* R. 106-4 at 24.

reporting to a medical technician that he was "unable to ambulate," *id.* ¶ 34, because his back "gave out" while leaving the cafeteria. R. 106-2 at 77:5-19. Harrison was evaluated by physician's assistant Williams, who diagnosed Harrison with lower back pain and radiculopathy in his right leg.[2] R. 106 ¶ 35. Williams administered an injection of Toradol (an anti-inflammatory pain reliever), prescribed Tylenol 3 and Robaxin, and provided Harrison with a lay-in permit, a no-gym/no yard permit, a low-gallery permit, and a crutch permit. *Id.* After remaining in the Health Care Unit for about two hours, Harrison reported that his pain was reduced, and that he felt he could go back to his cell on his own. *Id.* ¶ 36. On November 12, Harrison had a follow-up with Williams, who examined him and extended his low-gallery and crutch permits. *Id.* ¶ 37. Williams later extended Harrison's lay-in permit at his request. *Id.* ¶ 38. Harrison also saw doctors about his pain complaints on December 19, 2013, January 10 and 17, February 19, and March 8 and 15, 2014. *Id.* ¶¶ 39-44.

On March 15, 2014, Wexford approved Harrison for a referral to a neurosurgeon at UIC. *Id.* ¶ 44. On March 31, Dr. Sajeel Khan and Dr. Konstantin Slavin saw Harrison at UIC for a neurosurgery evaluation. *Id.* ¶ 45. Harrison complained of worsening back pain and right lower extremity radiculopathic symptoms. R. 106-4 at 46. At this point in time he was walking with a crutch. *Id.* Dr.

---

[2] "Radiculopathy is a condition caused by compression, inflammation and/or injury to a spinal nerve root. Pressure on the nerve root results in pain, numbness, or a tingling sensation that travels or radiates to other areas of the body that are served by that nerve. Radiculopathy may occur when spinal stenosis or a herniated or ruptured disc compresses the nerve root." *See* National Institute of Neurological Disorders and Stroke, www.ninds.nih.gov/disorders/backpain/detail_backpain.htm (last visited June 22, 2015).

Khan and Dr. Slavin reviewed Harrison's previous MRI results and determined that there were "no clear cut signs of why" Harrison had radiculopathy. R. 106 ¶ 45. The doctors recommended that Harrison receive a second MRI and that Harrison be referred to the pain clinic if the MRI did not reflect any changes. *Id.* In April, Dr. Obaisi secured approval from Wexford for Harrison to be treated at the UIC pain clinic pending a second MRI, which Dr. Obaisi also scheduled for Harrison. *Id.* ¶¶ 47-49.

Harrison saw Dr. Obaissi again on May 20, and was referred for physical therapy. *Id.* ¶ 52. On June 10, Harrison's MRI was still pending, but he had his initial physical therapy evaluation, which recommended that Harrison attend physical therapy once or twice a week for eight weeks. *Id.* ¶¶ 53-54. Harrison attended subsequent physical therapy sessions on June 23, July 3, 7, 10, 14, 16 and 29, and August 14 and 18. *Id.* ¶ 54. On August 20, Dr. Obaisi renewed his Norco prescription and also prescribed Naprosyn, an anti-inflammatory drug. *Id.* ¶ 56.

Harrison underwent a second MRI at UIC on September 22, 2014, the results of which were similar to his previous MRI in showing degeneration in the lower lumbar spine. *Id.* ¶ 57. Two days later on September 24, Harrison's back gave out, and Dr. Obaisi diagnosed Harrison with a low-back sprain, administered an injection of Toradol, and renewed Harrison's prescription for Naprosyn. *Id.* ¶ 58. On October 2, Dr. Obaisi reviewed Harrison's most-recent MRI results, which showed no spinal stenosis, no foraminal stenosis, and no herniated discs. *Id.* ¶ 61. Dr. Obaisi referred

Harrison to the pain clinic per the recommendations of the treating neurosurgeons at UIC. *Id.* On November 7, Harrison's back gave out again. *Id.* ¶ 62. Harrison was not treated at the UIC pain clinic until December 4, 2014, where he was given an epidural steroid injection. *Id.* ¶ 63.

Dr. Obaisi has submitted a declaration stating his opinion that he and the other doctors at Stateville provided appropriate care to Harrison. R. 106-3 ¶ 58. Dr. Obaisi does not believe that Harrison's medical condition requires surgery. *Id.* ¶ 59. Dr. Obaisi also states that all decisions regarding Harrison's care were made in good faith based on his experience and training, and that he and the other medical professionals at Stateville fully complied with the standard of care in treating Harrison. *Id.* ¶ 63.

Harrison filed three grievances regarding the allegations in this lawsuit, on November 12 and 27, and December 8, 2012, all of which are attached to his complaint. R. 106 ¶ 73; R. 112 ¶ 31. Harrison acknowledged in his deposition testimony that the Administrative Review Board (the "ARB") requested additional documentation as to his grievances that he did not provide. R. 106 ¶¶ 74-75; R. 112 ¶¶ 32-33. He also acknowledged that he did not file a grievance as to the alleged retaliatory conduct of Sergeant Mayes. R. 112 ¶ 33.

**Analysis**

## I.     The Medical Defendants

In support of their motion for summary judgment, Dr. Obaisi and Wexford argue that: (1) Harrison failed to exhaust his administrative remedies; and (2) Harrison failed to establish either prong of his deliberate indifference claim because he has not shown that Defendants were deliberately indifferent to an objectively serious medical condition.

### A.     Administrative Exhaustion

The Court must reject the first argument. The record evidence shows that Harrison submitted grievances on November 12 and 27, and December 8, 2012, with the first two grievances labeled by Harrison as "emergency" grievances. *See* R. 106 ¶ 73. Warden Marcus Hardy denied these grievances, deeming them not to be emergencies. R. 8 at 15-23, 27-29. The sole response from the ARB was a letter indicating that Harrison should provide additional documentation, including the counselor and the grievance officer's responses. *Id.* at 14. Harrison testified that he did not provide this documentation. R. 106-2 at 32:15–33:10. The Medical Defendants argue that Harrison's failure to provide the additional documentation means he failed to exhaust his remedies, and dooms his claim.

Prisoners must exhaust their administrative remedies prior to filing suit to allow prison officials an opportunity to address complaints internally before a lawsuit is filed. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524-25

10

(2002). "To exhaust [administrative] remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The Illinois Administrative Code provides that "[a]n offender may request that a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer." 20 Ill. Admin. Code § 504.840.

The Seventh Circuit has held that an inmate who has requested that prison officials handle a grievance as an emergency is not required to resubmit that grievance through the normal channels after the warden, who is responsible for acting on emergency grievances, has decided that the complaint at issue is not an emergency. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("There is nothing in the current regulatory text . . . that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."). While the Medical Defendants fault Harrison for not submitting the additional documentation requested by the ARB, those documents appear to be a counselor's response and a grievance officer's response, which Harrison did not have because he proceeded through emergency channels. In order to obtain them, he would have had to essentially start the grievance process over, a requirement the Seventh Circuit has declined to impose upon prisoners. *See, e.g., Glick v. Walker*, 385 Fed. App'x 579, 583 (7th Cir. 2010); *Muhammad v. McAdory*, 214 Fed. App'x 610, 612-13 (7th Cir. 2007); *see also Quigley v. Hardy*, 2013 WL 5781737, at *3-4 (N.D. Ill. Oct. 24, 2013); *Mims v.*

*Hardy*, 2013 WL 2451149, at *7-8 (N.D. Ill. June 5, 2013); *Dixon v. Schaefer*, 2013 WL 941971, at *3-4 (N.D. Ill. Mar. 11, 2013). Accordingly, the Medical Defendants' motion for summary judgment on the ground that Harrison failed to exhaust his administrative remedies is denied.

## B.    The Merits

The Medical Defendants also contend that Harrison cannot prevail on the merits. For deficient medical care to rise to the level of a civil rights violation, correctional officials must have acted with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pittman v. County of Madison*, 746 F.3d 766, 775 (7th Cir. 2014). In order to demonstrate deliberate indifference, Harrison must show (1) that he suffers from an objectively serious medical condition; and (2) that Defendants knew about his condition and the risk it posed, but disregarded the risk. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

### 1.    Objectively Serious Medical Condition

The Medical Defendants first contend that Harrison cannot show that his medical condition was objectively serious. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a lay person." *Id.* "Although the 'serious medical need' formulation is far from self-defining, it is clear that the Supreme Court contemplated that medical conditions far less critical than 'life-threatening' would be encompassed by the term." *Guitierrez v. Peters*, 111 F.3d 1364, 1370 (7th Cir. 1997). Here, while

the Medical Defendants describe Harrison's back pains as "normal aches and pains" that accompanied a muscle strain, the record shows that Harrison has received treatment over a period of more than two years, including pain relievers, muscle relaxers, physical therapy, injections and significant diagnostic procedures. While his diagnoses varied over the years, the physicians at UIC described Harrison as having "lumbar spondylosis with right-sided L-5 radiculopathic symptoms." R. 106-4 at 47. Although UIC doctors could not explain his symptoms, the medical records as a whole, including Harrison's complaints of pain, are sufficient to demonstrate that Harrison had a condition requiring medical treatment. Notably, the plaintiff in *Estelle*—one of the major cases outlining the standard for establishing a deliberate indifference claim—based his claim on a failure to diagnosis and treat his back injury, which had been diagnosed by doctors as a lower back strain and treated with muscle relaxants and painkillers. 429 U.S. at 107. This is the same type of claim at issue here. Therefore, Harrison has demonstrated that he suffered from an objectively serious medical condition.

### 2. Deliberate Indifference

Harrison's claim against the Medical Defendants nonetheless fails, as he has not provided evidence supporting his claim that either Dr. Obaisi or Wexford was deliberately indifferent to his serious medical condition. Harrison alleges, essentially, that Dr. Obaisi has pursued an ineffective course of treatment. Harrison testified that although he received medication, examinations, and diagnostic

treatments, he disagreed with the course of treatment that he received. R. 106-2 at 80:15-18. Specifically, he takes issue with the amount of time it took to obtain an MRI (about five months), as well as the amount of time it took to approve him to see an outside specialist (about a year and five months), and alleges that he has never received physical therapy. *Id.* at 79:18-80:5. But the Medical Defendants have produced medical records demonstrating that Harrison received physical therapy, *see* R. 106-4 at 62-68, a fact which Harrison has admitted since he failed to properly respond to Defendants statement of fact under Local Rule 56.1. In his response, Harrison also argues that Dr. Obaisi has not provided him with amitriptyline, a medication prescribed by the doctors at UIC that he contends helps him sleep at night. R. 113 at 7, 16.

In order to establish deliberate indifference, a Harrison must show more than mere negligence or even medical malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). A prisoner may establish deliberate indifference by demonstrating that the treatment he received was "blatantly inappropriate." *Pyles*, 771 F.3d at 409. But "[m]aking that showing is not easy[.] A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Id.* "Disagreement between an prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* "The federal courts will not interfere with a

doctor's decision to pursue a particular course of treatment unless that decision departs so significantly from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id.*

In considering whether a course of treatment demonstrates deliberate indifference, the Court must examine the "totality" of the Harrison's care. *See Gutierrez*, 111 F.3d at 1375. The documents in the record show frequent treatment from Dr. Obaisi and others in the form of physical examinations, prescriptions for pain relievers and muscle relaxers, injections, diagnostic examinations, including two MRIs, and ultimately, a referral to specialists at UIC, as well as UIC's pain clinic. Dr. Obaisi and others also prescribed accommodations for Harrison in the form of lay-ins, low-bunk/low-gallery permits, and crutches. It is true that Harrison has continued to complain of severe pain, and the Court recognizes that he is unhappy with what he perceives as delays in providing treatment such as MRIs and referral to a specialist. However, there is no evidence that professional standards required Dr. Obaisi to do more than he did in the course of treatment he followed, much less that the course of treatment departed so significantly from the standard of care as to constitute deliberate indifference. *See, e.g., Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code

that mandates specific medical treatment."); *see also Estelle*, 429 U.S. at 107 ("But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . ."). It may be unrealistic for a pro se plaintiff who is in custody to produce evidence directly relevant to the proper application of professional standards. But the evidence in the record taken in the light most favorable to Harrison shows that Dr. Obaisi has been responsive to his complaints. That Dr. Obaisi has been unable to alleviate Harrison's pain to Harrison's satisfaction is not per se evidence of deliberate indifference.

While Harrison points to Dr. Obaisi's failure to provide amitriptyline—a particular medication that was prescribed by the UIC doctors—in the absence of any evidence that this refusal amounted to a substantial departure from the accepted standard of care, this at most amounts to a difference in professional judgment, not deliberate indifference. *See Verser v. Ghosh*, 925 F. Supp. 2d 1028, 1034-35 (N.D. Ill. 2013) (holding that a prison doctor's failure to follow the treatment recommendation of an outside doctor did not constitute deliberate indifference where there was no indication that the decision amounted to a substantial departure from professional standards). The fact that Harrison asserts that he continues to experience pain, while unfortunate, does not amount to deliberate indifference. *See Gayton v. McCoy*,

593 F.3d 610, 620 (7th Cir. 2010) ("Even if a defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994))). Because Harrison has not established that Dr. Obaisi's treatment amounted to a departure from the standard of care, much less a substantial one, Dr. Obaisi is entitled to summary judgment.

As to Wexford, while Harrison testified that Wexford had a policy to provide "a bare minimum of care," *see* R. 106-2 at 26:1-12, he has provided no evidence supporting this assertion. To the contrary, the record demonstrates that Harrison has consistently had access to medical professionals at Stateville as well as specialists outside the prison. Further, given that Harrison cannot establish that his treatment violated constitutional standards, he cannot prevail on his claim against Wexford. *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) ("It is unnecessary to decide what the firm's policy may be, since [the plaintiff] has not established a constitutional problem with his treatment and thus did not suffer actionable injury from the policy he attributes to the corporation."). Therefore, summary judgment is also granted in favor of Wexford.

## II.    The Stateville Defendants

In their motion for summary judgment, the Stateville Defendants argue that: (1) Harrison failed to exhaust his administrative remedies; (2) Harrison has failed to produce evidence to show that Sergeant Mayes and Nurse Encarnacion were

deliberately indifferent to his serious medical needs; and (3) Harrison has failed to produce evidence in support of his claim that Sergeant Mayes retaliated against him for filing grievances by refusing to honor certain of his permits, refusing to allow him to work, and refusing to allow him additional showers.

## A.    Administrative Exhaustion & Retaliation

As to the exhaustion argument, it is partially based on Harrison's failure to follow the directive from the ARB that he submit certain additional documentation, which the Court addressed with reference to the Medical Defendants' motion. That argument is rejected for the reasons explained above.

Sergeant Mayes also seeks dismissal of the Harrison's retaliation claim on the ground that Harrison acknowledges that he did not file any grievances alleging retaliatory conduct on the part of Mayes. R. 106-2 at 101:22–102:10. Harrison has also essentially abandoned his retaliation claim by failing to address it in his response to Defendants' summary judgment motion, and Sergeant Mayes's argument is well-taken. A review of Harrison's grievances and his deposition testimony indicates that Harrison did not file any grievances related to the alleged retaliatory conduct of Sergeant Mayes. The Seventh Circuit "has taken a strict compliance approach to exhaustion" under the Prison Litigation Reform Act. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Harrison's grievances contain no mention of the alleged retaliatory conduct, and he therefore gave prison officials no opportunity to address those allegations internally. *See Porter*, 534 U.S. at 524-25; *see also* 20 Ill.

Admin. Code § 504.810(b) ("grievance shall contain factual details regarding each aspect of the offender's complaint"). Consequently, Harrison's retaliation claim against Sergeant Mayes is dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

The Court would generally make a dismissal for failure to exhaust without prejudice. However, Illinois Department of Corrections regulations state that all administrative grievances must be "filed within 60 days of the discovery of the incident, occurrence, or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a); *Cannon v. Washington*, 418 F.3d 714, 717 (7th Cir. 2005). The failure to file a timely grievance constitutes a failure to exhaust. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Given that the alleged retaliation of which Harrison complains occurred shortly after his fall on November 12, 2012, it is too late for Plaintiff to exhaust his administrative remedies, and for that reason, Harrison's retaliation claim is dismissed with prejudice.

### B. Deliberate Indifference

In regard to Harrison's deliberate indifference claims, as noted above, Harrison must show that Defendants were deliberately indifferent to a serious risk of harm. Harrison's claim against Sergeant Mayes and Nurse Encarnacion is essentially that they failed to provide immediate medical treatment following his fall. Harrison contends that he was forced to return to his cell on his own and woke up the next day "stiff as a board," and unable to move his back. R. 106-2 at 79:2-14.

A "delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim." *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). However, "a minor delay in treatment [does not] constitute[] deliberate indifference." *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). "Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency." *Id.* The reasonableness of the delay is measured by considering the severity of the condition and its pain against the ease in treatment. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

As to Sergeant Mayes, it is undisputed that he has no medical training or experience, and no authority to contradict the decisions of medical professionals. It is also undisputed that Sergeant Mayes called the Health Care Unit immediately following the accident, and that the Health Care Unit advised him that Harrison would be seen the next day, information that Sergeant Mayes conveyed to Harrison. Ultimately, Harrison received treatment within 24 hours of his fall.

Non-medical officials cannot be held liable for reasonably relying on the medical judgment of professionals. *See Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005) ("We do not think [the defendant's] failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference."). Where non-medical defendants investigate a prisoner's complaint and refer it to responsible medical providers, there is a presumption that they are

entitled to defer to the professional judgment of the medical providers on questions of care. *See Knight v. Wiseman*, 590 F.3d 458, 465 (7th Cir. 2009). Harrison presents no evidence to overcome this presumption, and as such Sergeant Mayes is entitled to summary judgment on Harrison's claim of deliberate indifference.

As to Nurse Encarnacion, it is undisputed that she was distributing medication to other inmates at the time of Harrison's fall. Had she interrupted her duties to tend to Harrison's injuries as he suggests, she would have delayed other inmates' receipt of their prescribed medication. Nor is there any evidence that Nurse Encarnacion had a surplus of medication that she could have provided to Harrison outside of the prescriptions she had on hand for other inmates. *See*, *e.g.*, *Rowe v. Brown*, 2013 WL 961428, at *3 (S.D. Ind. Mar. 11, 2013) (discussing these factors in light of the plaintiff's claim that a nurse delivering medications should have treated his back injury, and noting that a defendant who responds reasonably to a request for treatment does not violate the Eighth Amendment). Rather than interrupting her duties, Nurse Encarnacion instructed Sergeant Mayes to call the Health Care Unit so that a medical technician could examine Harrison. Although Harrison did not receive treatment until the following day, there is no evidence that Nurse Encarnacion was responsible for this delay. Nor is there any evidence in the record indicating that Harrison's complaints of neck pain immediately following the fall amounted to a medical emergency requiring immediate treatment. As noted above, a medical professional is entitled to deference in treatment decisions unless "no

minimally competent professional would have so responded under the circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Based on this record, there is no evidence upon which a reasonable jury could find that Nurse Encarnacion was deliberately indifferent to Harrison's serious health needs, and she is entitled to summary judgment on Harrison's deliberate indifference claim.

## Conclusion

For the foregoing reasons, Defendants Saleh Obaisi and Wexford Health Sources's motion for summary judgment, R. 103, is granted. Defendants Jennifer Encarnacion and Troy Mayes's motion for summary judgment, R. 108, is also granted. All claims are dismissed with prejudice.

If Harrison wishes to appeal these final judgments, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Harrison plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Harrison does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dept. of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Harrison may also be assessed a "strike" under 28 U.S.C. § 1915(g). Harrison is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court

without prepaying the filing fee unless he is in imminent danger of serious physical injury.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: June 23, 2015